# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

ALTON HOLLAND, JR., :
:
    Plaintiff, :
:
    v. : 5:09-CV-262 (CAR)
:
PILOT TRAVEL CENTERS, LLC, :
:
    Defendant. :
_____:

## ORDER ON DEFENDANT'S MOTION TO DISMISS

Currently before the Court is Defendant's Motion to Dismiss [Doc. 21]. On July 27, 2009, Plaintiff Alton Holland, Jr., proceeding *pro se*, filed suit against his former employer, Defendant Pilot Travel Centers, LLC. Plaintiff filed an Amended Complaint [Doc. 4] on September 1, 2009, in response to this Court's Order for a more definite statement [Doc. 3]. Then on February 4, 2010, Plaintiff filed a Second Amended Complaint [Doc. 17] seeking damages on claims for various forms of discrimination and emotional distress related to his employment with Defendant. Plaintiff has failed to allege the basic facts necessary to make out the prima facie case for any of his claims. Therefore, Defendant's Motion to Dismiss is **GRANTED**. All claims in Plaintiff's Second Amended Complaint are hereby **DISMISSED**.

## BACKGROUND

Plaintiff, who is a black male, alleges in his Second Amended Complaint that two employees of Defendant, both of whom he describes as black males, discriminated against him. The two men were Plaintiff's managers at the Pilot Travel Center ("Center") in Byron, Georgia. Plaintiff began working at the Center as a maintenance employee on March 28, 2002. He was promoted to the position of supervisor in August 2007. Plaintiff claims these managers

discriminated against him by failing to train him in his new position and demanding that Plaintiff return $500 he had taken from a company safe. Plaintiff named both of these men as defendants in his original complaint, but the Court dismissed them as improperly named parties since a plaintiff cannot sue former supervisors individually for employment discrimination.

After Plaintiff filed an improper "Response in Opposition to Defendant's Answer" [Doc. 15], the Court held a status hearing on February 3, 2010, at which time the Court dismissed Plaintiff's Response [Doc. 18]. The Court outlined for Plaintiff its expectations and encouraged Plaintiff to obtain counsel because of the many procedural pitfalls inherent in an employment discrimination claim. Plaintiff responded that he could not find an attorney willing to represent him and asked the Court to appoint outside counsel. The Court does not generally appoint counsel to represent *pro se* litigants in civil matters, which the Court explained to Defendant before denying his request.

Without leave of the Court, Plaintiff filed a Second Amended Complaint the next day, on February 4, 2010 [Doc. 17]. Therein, Plaintiff alleges claims against Defendant for i) disparate impact in employment decisions, ii) unconstitutional retaliation in the workplace, iii) race discrimination, iv) sex discrimination, v) age discrimination, vi) disability discrimination, vii) intentional infliction of emotional distress, viii) negligent infliction of emotional distress, ix) tortious interference, and x) RICO violations.

The handwritten pages attached to the Complaint describe Plaintiff's version of events following his promotion to supervisor in August 2007. Although Plaintiff admits to having received some training, such as how to run the store through the night, he claims his managers did not provide him the training necessary to perform his new responsibilities. Plaintiff also indicates in an attachment to the main Complaint that white females in supervisory positions did

receive training, but he does not specify what types of training they received that he needed.

In September 2007, Plaintiff inquired with one of his supervisors about the lack of progress in training him. According to Plaintiff, the supervisor responded that he was not comfortable having Plaintiff in the office because of issues with previous employees involving the large sums of money stored there. Plaintiff perceived this comment as an accusation that he was untrustworthy, which he claims caused him severe emotional distress and was discriminatory.

Plaintiff also describes at length a dispute related to his taking $500 from the company safe to pay for repairs to his personal vehicle. In January 2008 a wheel broke off the axle of his pickup truck one morning, so he called his managers to tell them he had no transportation to work that night. His direct supervisor obtained approval to have a taxi pick up Plaintiff at the repair shop and bring him to the Center in time for his evening shift. After he arrived, the supervisor told Plaintiff that Defendant might issue a "voucher" to help with the truck repairs. Plaintiff argues that the supervisor's comment impliedly authorized Plaintiff to have another employee issue him $500 out of the center's safe later that evening.

When Plaintiff arrived for work the next night, his supervisor summoned him to his office where the manager of the Center demanded to know how Plaintiff found the "gall to come into his office and take money out of his safe." The manager said he needed the $500 back in the safe before the regional manager discovered it missing. Plaintiff pulled $500 in cash out of his pocket and returned it to the manager. He does not feel he abused his new supervisory position to obtain the funds, as suggested by management in the exchange, because he needed the money to repair his truck, which was his only transportation to and from work. The situation left him angry, distressed, frightened, and humiliated.

Plaintiff filed a complaint with the EEOC on August 26, 2008, alleging race, sex, and age discrimination and retaliation. The EEOC issued a letter to sue on June 19, 2009. Some months after Plaintiff filed suit but before he submitted the Second Amended Complaint, Defendant fired Plaintiff on January 9, 2010. Plaintiff, however, does not raise the issue of his dismissal from the Center in the Second Amended Complaint, and specifically indicates that all of the alleged discrimination occurred between March 1, 2008, and July 8, 2008.

**LEGAL STANDARD**

In considering dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court must accept the allegations set forth in the complaint as true and construe facts in the light most favorable to the plaintiff. See Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999) (per curiam). The Supreme Court requires that "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face,'" which requires that the plaintiff plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted). This plausibility standard is not a probability requirement but demands "more than a sheer possibility that a defendant has acted unlawfully." Id.

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. The court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. "Bare assertions" that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim "are conclusory and not entitled to be assumed as true."

Id. at 1951. A complaint need not have detailed factual allegations to survive a motion to dismiss, but the facts provided must be more than labels and conclusions and "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The Court must limit its consideration to the complaint and its attachments. See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or (c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); GSW v. Long County, Ga., 999 F.2d 1508, 1510 (11th Cir. 1993) (stating "the court limits its consideration to the pleadings and exhibits attached thereto.").

The Court affords a *pro se* plaintiff wide latitude when construing his pleadings and papers. See SEC v. Elliott, 953 F.2d 1560, 1582 (11th Cir. 1992); see also Haines v. Kerner, 404 U.S. 519, 520 (1972) (holding *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). Even so, a *pro se* litigant is not exempt from complying with relevant rules of procedural and substantive law. See Wayne v. Jarvis, 197 F.3d 1098, 1104 (11th Cir. 1999); Clark v. Bibb County Bd. of Educ., 174 F. Supp. 2d 1369, 1371 (M.D. Ga. 2001). Specifically, *pro se* pleadings must eventually conform with Rule 8 of the Federal Rules of Civil Procedure or face dismissal. Harris v. Ostrout, 65 F.3d 912, 915 n.3 (11th Cir. 1995) (upholding refusal to allow claimant to re-plead without showing of "extraordinary circumstances" after third amended complaint failed to cure earlier deficiencies).

Nor does this latitude given *pro se* litigants require the Court to re-write a deficient complaint. Peterson v. Atlanta Hous. Auth., 998 F.2d 904, 912 (11th Cir. 1993) (noting lack of any reference in complaint to actual injury and inherent vagueness in pleading terms like "due process" without elaboration). As a sister circuit has noted, "Judges are not like pigs, hunting for truffles buried in briefs." United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. Ill. 1991).

**ANALYSIS**

Defendant has asked the Court to dismiss Plaintiff's Second Amended Complaint on two grounds. First, Defendant seeks dismissal on grounds Plaintiff failed to obtain the Court's consent prior to amending his pleading for a third time. Second, Defendant moves for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

As to Defendant's first argument, Plaintiff cannot properly amend his pleadings as a matter of right, but the Court finds it in the interests of justice to grant him leave to do so. See Fed. R. Civ. Pro. 15. Since the Court ordered Plaintiff to file a first Amended Complaint in August of last year, he had no opportunity to amend on his own initiative. In light of Plaintiff's *pro se* status, moreover, the timing and substance of the Second Amended Complaint appears to be a good faith attempt to comply with the Court's guidance at the February status hearing. For these reasons, the Court permits Plaintiff's Second Amended Complaint to stand and take the place of his prior pleadings.

Proceeding to the merits, the Court must nevertheless dismiss the Complaint for failure to state a claim upon which relief can be granted. Plaintiff alleges ten claims for relief–six sounding in employment discrimination, three in tort, and one in RICO. All are due to be dismissed because none states sufficient facts on which relief could be granted. The Court explains below its reasoning as to each cause of action.

a. Disparate Impact Claim

To state a prima facie case for racial discrimination on a theory of disparate impact under Title VII, an employee must establish that 1) there is a significant statistical disparity among members of different racial groups; 2) there is a specific, facially-neutral employment policy or

practice; and 3) there is a causal nexus between the specific policy or practice and the statistical disparity. Equal Employment Opportunity Comm'n v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1265 (11th Cir. 2000). Plaintiff's burden in establishing a prima facie case goes beyond the need to show that there are statistical disparities in the employer's work force. Watson v. Ft. Worth Bank & Trust, 487 U.S. 977, 994 (1988). The plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group. Id. Statistical disparities must be sufficiently substantial to raise such an inference of causation. Id. at 994-95.

Plaintiff has not identified any specific employment practice that may have caused statistically significant discriminatory impact. Plaintiff does not reference any statistical data to support such a claim. In fact, the only two employees at the Center specifically identified by Plaintiff as having discriminated against him are both black males, just like him. Plaintiff has failed to state a claim on a theory of disparate impact.

b. Retaliation Claim

A prima facie case of retaliation requires Plaintiff to show that 1) he engaged in statutorily protected expression; 2) he suffered an adverse employment action; and 3) there is some causal relation between the two events. Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008). An employee engages in a statutorily protected expression if he opposes a practice forbidden under Title VII, such as race discrimination (the opposition clause), or has made a charge, testified, assisted, or participated in a Title VII investigation, proceeding, or hearing (the participation clause). Duncan v. Madison County, 272 F. App'x 859, 863 (11th Cir. 2008). In order to be considered "materially adverse," the alleged employer

7

action must be harmful to the point that it could dissuade a reasonable worker from making or supporting a charge of discrimination. Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 57 (U.S. 2006). A retaliation claim cannot be based on the day-to-day trials and tribulations of the workplace. Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000).

Plaintiff has not alleged any facts to establish that he engaged in any protected activity, much less that Defendant was aware of any protected activity or that there was a causal connection between any protected activity and his termination. Consequently, Plaintiff has failed to state a claim for retaliation.

c. Race and Sex Discrimination Claims

To establish a prima facie case for either race or sex discrimination pursuant to 42 U.S.C. § 2000e *et seq* ("Title VII"), Plaintiff must show that:

1) he is a member of a protected class;
2) he was subject to an adverse employment action;
3) his managers treated similarly situated employees who were not members of his protected class more favorably or he was replaced by a person from outside his protected class; and
4) he was qualified for the job.

Gillis v. Georgia Dept. of Corr., 400 F.3d 883, 887 (11th Cir. 2005); See also Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008). Defendant does not dispute that Plaintiff, as a black male, is a member of a protected racial class. The Court will assume for purposes of this Motion that he was qualified for his job, since Defendant had promoted him to that position. At issue, therefore, is whether Plaintiff has sufficiently pled that he suffered an adverse employment action and that a similarly situated employee of another race or sex received more favorable treatment than he did under the same circumstances.

Plaintiff alleges in his Complaint that Defendant denied him the training necessary to

succeed in his job. Plaintiff attached a typewritten statement to his handwritten Complaint. A fragment contained in the middle of this text states the following: "Pilot did not fail to train my coworkers in the supervisor position who were white females." The Court will liberally construe this attachment to be part of the Complaint.

Even so, Plaintiff has failed to plead sufficient facts to show that he suffered an adverse employment action. Plaintiff may have identified employees outside his protected class, but he has not pled any facts to indicate that Defendant treated them more favorably in relation to any adverse employment action. Plaintiff conceded in his Second Amended Complaint that his discharge in January 2010 was unrelated to the alleged discrimination by Defendant, which Plaintiff indicates had ended by July 8, 2008, over a year earlier.

Thus, Plaintiff is left with his assertion that Defendant failed to train him in his new position. But Plaintiff fails to allege that any denial of training by Defendant had a material effect on the terms or conditions of his employment. See Osahar v. United States Postal Serv., 297 Fed. App'x 863, 864 (11th Cir. 2008) (per curiam); Crawford, 529 F.3d at 970-71. He fails to plead facts showing how he was disadvantaged in comparison to employees of another race or sex. See, e.g., Brown v. Progress Energy, No. 09-11079, 2010 WL 381121, at *1 (11th Cir. Feb. 4, 2010) (per curiam) ("[T]he evidence presented here is insufficiently concrete to establish as a matter of fact that [the plaintiff] was actually denied otherwise available training."); Dacosta v. Birmingham Water Works & Sewer Bd., 256 Fed. App'x 283, 288 (11th Cir. 2007) (per curiam) (upholding dismissal of failure to train claim for insufficient factual showing that defendant refused specific requests by plaintiff for training in retaliation for plaintiff's complaints against company).

The Eighth Circuit has noted that an "employer's denial of an employee's request for

training is not, without more, an adverse employment action." Box v. Principi, 442 F.3d 692, 697 (8th Cir. 2006) (internal quotations marks and citation omitted). For instance, Defendant may not have felt that Plaintiff required the training needed by the other employees whom he cites to become proficient in the supervisor position. This Court cannot second-guess the wisdom of an employment decision absent evidence that the employer has applied its policies in a discriminatory manner. See Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999); Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1311-12, modified on other grounds, 151 F.3d 132 (11th Cir. 1998).

Regardless, Plaintiff has not included a sufficient factual background in his pleadings to "nudge[] [his] claims across the line from conceivable to plausible[.]" Twombly, 550 U.S. at 570. To proceed on a claim for sex or race discrimination, Plaintiff cannot simply make a number of legal accusations and attach a few isolated fact fragments. He must somehow combine the two to form a coherent theory of the case. Here, Plaintiff has not pled sufficient "factual content [to] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. The mere possibility that Defendant acted unlawfully is insufficient to survive a motion to dismiss. Id. Even assuming all of the allegations in the Second Amended Complaint are true, the Court would need to speculate on Plaintiff's right to relief. A lack of training alone does not give rise to a direct and reasonable inference of race or sex discrimination. Plaintiff, therefore, has not alleged "enough facts to state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570.

Plaintiff must build his own case beginning with a properly pled complaint. He cannot rely on the Court to construct his claims for him out of a jumble of facts. Notwithstanding Plaintiff's *pro se* status, the Court need not re-write deficient pleadings but must only construe

the Complaint liberally in his favor. Peterson, 998 F.2d at 912. Even construing this Complaint in Plaintiff's favor, he has failed to state a claim for sex or race discrimination.

d. Age Discrimination Claim

In order to establish a prima facie case of age discrimination, Plaintiff must show that: 1) he was a member of the protected age group; 2) he was subjected to an adverse-employment decision; 3) he was qualified to do the job; and 4) he was replaced by a younger individual or treated less favorably than a similarly situated employee who is substantially younger. Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000).

Plaintiff does not provide his age anywhere in the Second Amended Complaint, but Defendant concedes for the purpose of this Motion that Plaintiff was over the age of 40 at the time he was fired. Plaintiff has not pled, however, that he was replaced by or treated differently than a younger employee. Not having identified a potential comparator, Plaintiff cannot, as a matter of law, proceed on an age discrimination claim.

e. Disability Discrimination Claim

To plead a disability discrimination claim under the ADA, Plaintiff must establish that: 1) he is disabled, 2) he is a qualified individual, and 3) he was subject to unlawful discrimination because of his disability. Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000). Plaintiff did not indicate in his Complaint that he suffers from any disability. He alleged no physical or mental impairments at all. Nor does Plaintiff claim that Defendant classified him as disabled.

Even assuming Plaintiff suffers from a disability, as defined in the ADA, Plaintiff's disability discrimination claim is due to be dismissed because Plaintiff failed to make a showing

that he first pursued an administrative remedy–a prerequisite to bringing a lawsuit. See, e.g., Chanda v. Engelhard/ICC, 234 F.3d 1219, 1224-25 (11th Cir. 2000) (affirming dismissal of plaintiff's claim of retaliatory discharge based on national origin discrimination because not raised in EEOC charge of disability discrimination and retaliation based on disability). Defendant has provided a copy of Plaintiff's Charge of Discrimination with the EEOC, which did not include a charge of disability discrimination. Plaintiff has failed to state a claim for disability discrimination.

f. Intentional Infliction of Emotional Distress Claim

To plead a claim for intentional infliction of emotional distress in Georgia, Plaintiff must show that: 1) Defendant engaged in conduct that was intentional or reckless; 2) the conduct was also extreme and outrageous; 3) there was a causal connection between the wrongful conduct and Plaintiff's alleged emotional distress; and 4) the emotional distress is severe. Phinazee v. Interstate Nationalease, Inc., 237 Ga. App. 39 (1999).

Plaintiff has failed to plead facts that would serve as a basis for any of these essential elements. He has not identified any conduct by Defendant that he considers intentional or reckless, extreme and outrageous, or that is causally connected to any alleged emotional distress. The fact of termination–even for improper reasons–is not the kind of egregious conduct that gives rise to a claim of intentional infliction of emotional distress. Beck v. Interstate Brands Corp., 953 F.2d 1275, 1276 (11th Cir. 1992). As a result, Plaintiff has failed to state a claim for intentional infliction of emotional distress.

g. Negligent Infliction of Emotional Distress Claim

In Georgia, a claim for negligent infliction of emotional distress requires a physical

impact. Johnson v. Allen, 272 Ga. App. 861 (2005). The Georgia impact rule has three elements: 1) a physical impact to the plaintiff; 2) the physical impact causes physical injury to the plaintiff; and 3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress. Id. In the Second Amended Complaint, Plaintiff makes no showing that he suffered any physical impact caused by Defendant. As a matter of law, therefore, Plaintiff has not stated a claim for negligent infliction of emotional distress.

h. Tortious Interference Claim

The elements of a tortious interference claim are 1) improper action or wrongful conduct by the defendant without privilege; 2) the defendant acted purposely and with malice with the intent to injure; 3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and 4) the defendant's tortious conduct proximately caused damage to the plaintiff. Fortson v. Brown, 302 Ga. App. 89, 92, 690 S.E.2d 239, 241 (2010).

Plaintiff has not pled any of the basic facts necessary to make out a prima facie case for tortious interference with contractual relations. He has not alleged that Defendant acted purposefully and with an intent to injure him, and he has not identified either a contractual or a business relationship. An employer cannot tortiously interfere with its own employment contact, particularly where the contract is at-will. See, e.g., Johnson v. Wal-Mart Stores, 987 F. Supp. 1376, 1398 (M.D. Ala. 1997). As such, Plaintiff has stated no claim for tortious interference.

i. RICO Claim

A civil claim under the federal RICO Act requires proof of four elements: 1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity. Langford v. Rite Aid of

Alabama, Inc., 231 F.3d 1308, 1311 (11th Cir. 2000). Racketeering activity includes any act enumerated in 18 U.S.C. § 1961(1). Id. at 1312 (citation omitted). Plaintiff has failed to allege any facts to suggest that Defendant engaged in a "pattern of racketeering activity" or did anything that could qualify as "racketeering activity" under 18 U.S.C. § 1961(1). Accordingly, Plaintiff has failed to state a claim under RICO.

## CONCLUSION

For the reasons explained above, Plaintiff's Second Amended Complaint must be **DISMISSED**. Even after two opportunities to re-plead his case, Plaintiff has failed to state a claim on which relief can be granted. Defendant's Motion to Dismiss this action is hereby **GRANTED**.

**SO ORDERED,** this 8th day of July, 2010.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

THC/chw